**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JO ANN SORSBY, *on behalf of herself and all others similarly situated*, <br><br>            Plaintiff, <br><br>    -against- <br><br> TRUGREEN LIMITED PARTNERSHIP, TRUGREEN, INC., TRUGREEN COMPANIES LLC, and TRUGREEN HOLDING CORPORATION, <br><br>            Defendants. | Case No. 1:20-cv-2601 <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Jo Ann Sorsby ("Ms. Sorsby" or "Plaintiff"), on behalf of herself and all similarly situated individuals, through her undersigned counsel, alleges on personal knowledge, investigation of her counsel, and on information and belief, the following claims against TruGreen Limited Partnership, TruGreen, Inc., TruGreen Companies LLC, and TruGreen Holding Corporation (collectively "TruGreen" or "Defendants").

**INTRODUCTION**

1.      This action is brought for violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, *et seq.* ("TCPA" or "the Act"). Among other things, the TCPA and its accompanying regulations prohibit telemarketers from making telephone solicitations to persons who have listed their telephone numbers on the National Do-Not-Call Registry, a database established to allow consumers to exclude themselves from telemarketing calls unless they consent to receive the calls in a signed, written agreement.

2.     Plaintiff Jo Ann Sorsby is one of the millions of consumers who have listed telephone numbers on the National Do-Not-Call Registry. Nonetheless, she has received numerous telemarketing sales calls on her Residential Landline made by, or on behalf of, TruGreen, even after she specifically asked TruGreen on multiple occasions to stop calling her.

3.     Ms. Sorsby is not the only person on the National Do-Not-Call Registry that has complained about TruGreen's illegal telemarketing practices. The FTC received over 800 complaints about TruGreen's telemarketing practices in just the past four years. Likewise, a simple Google search returns numerous posts on various websites from consumers complaining about receiving calls from TruGreen long after they terminated their service and asked TruGreen to stop calling them. Moreover, TruGreen has been the subject of multiple prior class action litigations concerning its unlawful telemarketing practices, including one settled less than five years ago in this district, where TruGreen agreed to pay $4,450,000 to a class of individuals harmed by its calling practices. Nonetheless, these consumer complaints and prior litigations have not dissuaded TruGreen from continuing its illegal telemarketing practices.

4.     Ms. Sorsby now brings this action, on behalf of herself and others similarly situated, seeking to recover statutory compensatory and punitive damages, and to secure injunctive relief to require TruGreen to cease its illegal conduct.

## SUBJECT MATTER JURISDICTION AND VENUE

5.     This court has original jurisdiction over this civil action as one arising under the laws of the United States. *See* 28 U.S.C. §1331 and *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012).

6.     Venue is proper in this Court under 28 U.S.C. §1391(b) because Defendants victimized Plaintiff on her Residential Landline located in Chicago, Illinois, where Plaintiff lives.

7.     Venue is also proper in this Court under 28 U.S.C. §1391(b) because Defendants regularly do business in the district and division, and they are subject to this Court's personal jurisdiction with respect to this civil action in the district and, as such, they "reside" in the district.

## PARTIES AND PERSONAL JURISDICTION

8.     Plaintiff Jo Ann Sorsby is, and at all times mentioned herein was, an individual citizen of the State of Illinois who resides in Chicago, Illinois.

9.     On information and belief, TruGreen Limited Partnership ("TruGreen LP") provides lawn care services. It offers lawn analysis, fertilization, tree and shrub care, weed control, insect control, and other related services to subscribers to its services. TruGreen LP is a Delaware Limited Partnership with its headquarters and with its principle place of business in Memphis, Tennessee.

10.     TruGreen Inc. is a corporation formed under the laws of the State of Delaware with its principle place of business in Memphis, Tennessee. TruGreen Inc. is believed to be a direct or indirect subsidiary of TruGreen LLP.

11.     TruGreen Companies LLC is a Limited Liability Company formed under the laws of the State of Delaware with its principle place of business in Memphis, Tennessee. TruGreen Companies LLC is believed to be a direct or indirect subsidiary of TruGreen LLP.

12.     TruGreen Holding Corporation is a corporation formed under the laws of the State of Delaware with its principle place of business in Memphis, Tennessee. TruGreen Holding Corporation is believed to be a direct or indirect subsidiary of TruGreen LLP.

13.     Defendants transact business throughout the United States. This includes transacting business in Illinois, and specifically in this district and division, through a branch office located at 13520 South Kenton Avenue, Crestwood, IL 60445.

14.     In addition to transacting business in Illinois, Defendants contract to supply services or goods in Illinois, including in this district and division.

15.     Defendants regularly do, or solicit, business, or engage in other persistent courses of conduct, or derive substantial revenue from goods used or consumed or services rendered in the State of Illinois, including in this district and division.

16.     In addition, through their acts in calling, or causing to be called, Plaintiff's Do-Not-Call Registry residential landline, Defendants caused tortious injury in the nature of an invasion of Plaintiff's privacy rights in this State, either by its acts in this State or, alternatively, by acts outside this State while regularly doing or soliciting business or engaging in a persistent course of conduct and deriving substantial revenue from goods used or consumed, or services rendered in this State.

17.     At all times pertinent, Defendants were, and are, engaged in interstate commerce in the United States of America, and Defendants used, and are using, instrumentalities of interstate commerce, including telephone lines and the mail, in the course of its activities set forth herein.

## APPLICABLE LAW

18.     The TCPA was enacted more than twenty years ago to regulate the explosive growth of telemarketing, which Congress recognized as a nuisance and an intrusive invasion of privacy.

19.     Consumers who do not want to receive telemarketing calls may indicate their preference by registering their telephone numbers on the National Do-Not-Call Registry. 47 C.F.R. § 64.1200(c)(2). According to the Federal Trade Commission, the Registry, which was established in 2003, has over 239 million active registrations.[1]

---

[1] *See FTC Releases FY 2019 National Do Not Call Registry Data Book*, available at: https://www.ftc.gov/news-events/press-releases/2019/10/ftc-releases-fy-2019-national-do-not-call-registry-data-book

20.     So long as a number appears on the National Do-Not-Call Registry, it is illegal for a company to place any telephone solicitations to that number. 47 U.S.C. § 227(c)(3)(F). These registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator. 47 C.F.R. § 64.1200(c)(2).

21.     One exception to this rule is that the TCPA allows a company to solicit a consumer whose phone number is on the National Do-Not-Call Registry when it has an "established business relationship" ("EBR") with that consumer. 47 U.S.C. § 227(a)(4) (excluding from the definition of "telephone solicitation . . . any person with whom the caller has an established business relationship"). The Federal Communications Commission defined an EBR to mean "a prior or existing relationship formed by a voluntary two-way communication between a[n] . . . entity and a" consumer on the basis of the consumer's "purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call . . . , which relationship has not been previously terminated by either party." 47 C.F.R. § 64.1200(f)(5). Among other things, a consumer can terminate an EBR with a company by asking the company to stop calling, even if the consumer continues to transact business with that company. *Id.* at § 64.1200(f)(5)(i).

22.     A consumer whose number is on the National Do-Not-Call Registry and has received more than one telemarketing call within any twelve-month period by, or on behalf of, the same company in violation of the TCPA, can sue the company and seek the greater of actual damages or $500, a figure that may be trebled for willful or knowing violations. 47 U.S.C. § 227(c)(5).

23.     It is simple for companies to avoid calling numbers listed on the National Do-Not-Call Registry. They can easily and inexpensively "scrub" their call lists against the National Do-Not-Call Registry database. The scrubbing process identifies those numbers on the National Do-

Not-Call Registry, allowing companies to remove those numbers and ensure that no calls are placed to consumers who opt-out of telemarketing calls.

24.     To avoid violating the TCPA by calling registered numbers, companies, *inter alia*, must scrub their call lists against the National Do-Not-Call Registry at least once every thirty-one (31) days. *See* 16 C.F.R. § 310.4(b)(3)(iv).

25.     Regulations implementing the TCPA also require companies to maintain Internal Do-Not-Call Registries. 47 C.F.R. § 64.1200(d). Once a company receives a request from a consumer not to receive calls, the number must be placed on the company's Company-Specific Do-Not-Call List (the "Internal Do-Not-Call List") within a reasonable time, not to exceed thirty (30) days from the date of the request. *Id*. at § 64.1200(d)(3).

26.     It has long been the law that a seller of goods or services can be liable for TCPA violations even if the seller does not directly place or initiate the calls. The provision that establishes a private right of action against an entity that violates the National Do-No-Call Registry restrictions provides that "[a] person who has received more than one telephone call within any twelve (12) month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may bring an action for damages and injunctive relief. 47 U.S.C. § 227(c)(5) (emphasis added). Likewise, 47 C.F.R. § 64.1200(d)(3) provides that once a number is added to a company's Internal Do-Not-Call List, the company "on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request."

27.     As explained by the FCC, the TCPA and its regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CC

Docket No. 92-90, Mem. Op. & Order, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) ("*1995 TCPA Reconsideration Order*").

28.     The FCC reiterated this principle in 2005, when it stated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules, and calls placed by a third party on behalf of that company are treated as if the company itself placed the call." *See 1995 TCPA Reconsideration Order*; *Request of State Farm Mutual Automobile Insurance Company for Clarification and Declaratory Ruling*, Declaratory Ruling, 20 FCC Rcd. 13664, 13667 ¶ 7 (2005).

29.     The FCC reaffirmed this in 2013, when it held that (a) a seller may, under principles of apparent authority, actual authority, and ratification, be liable for violations of § 227(c) by third parties, and (b) a seller may also be liable, under the express terms of § 227(c), for calls placed "on behalf of" the seller. *In re Joint Pet. filed by DISH Network LLC*, Declaratory Ruling, 28 FCC Rcd. 6574 (2013).

## FACTUAL ALLEGATIONS

### TruGreen's Prior Violations of the TCPA

30.     TruGreen is a national lawn care service provider headquartered in Memphis, Tennessee. According to the "2019 Top 100 Lawn & Landscape companies" list compiled by *Lawn & Landscape Market Leadership*,[2] TruGreen is the second largest lawn care provider in the United States and Canada, with over $1.3 billion in revenue in 2018 and more than 13,000 employees.

31.     TruGreen is unquestionably aware of its obligations under the TCPA to not call individuals on the National Do-Not-Call Registry or on its Internal Do-Not-Call List. In addition

---

[2] Available at: https://www.lawnandlandscape.com/article/top-100-lawn-care-landscaping-companies-2019/

to its obligations under the TCPA, TruGreen explicitly states on its website's privacy policy: "If you do not want to receive marketing phone calls from us, you may: . . . ask to be placed on our Do Not Call list when you receive a call from us[.]"[3]

32.     Nonetheless, as part of its aggressive marketing campaigns TruGreen appears to regularly ignore both its legal obligations and its own internal policies. TruGreen has previously been the subject of multiple class action litigations for its unlawful telemarketing practices, including *Chapa v. TruGreen Inc.*, in this very district, where Judge Leinenweber granted final approval of a $4,450,000 settlement on January 27, 2015. No. 1:13-cv-3957 (N.D. Ill. Jan. 25, 2017).

33.     Likewise, since 2015, TruGreen has been defending itself in a TCPA class action filed in the Western District of Tennessee entitled *Stevens-Bratton v. TruGreen, Inc.*, No. 2:15-cv-02472 (W.D. Tenn. filed July 15, 2015). In that matter, the named plaintiff asserted causes of action against TruGreen for violating the TCPA through its use of an automatic telephone dialing system ("ATDS") and/or automated or prerecorded messages to solicit business on calls made to cellular phones, through calls made to individuals on the National-Do-Not-Call List, and through calls made to individuals who had previously requested to be placed on TruGreen's Internal Do-Not-Call List. *Stevens-Bratton v TruGreen, Inc.*, No. 2:15-2472, 2020 WL 556405, at *1 (W.D. Tenn. Feb. 4, 2020). On February 4, 2020, the court in that case granted in part TruGreen's motion for summary judgment, holding that phone calls to the named plaintiff were not placed to a "residential subscriber" within the definition established by the FCC because the plaintiff had received the calls on her cell phone and she had not established that she used that cell phone as her residential line. *Id.* at *4. As a result, the court dismissed the causes of action based on violations

---

[3] *TruGreen Privacy Policy*, https://www.trugreen.com/about/privacy-policy (last modified Jan. 1, 2020).

of the National-Do-Not-Call Registry and the Internal Do-Not-Call List on the basis of standing, but it allowed the ATDS claim to proceed because the plaintiff did have standing for that claim. *Id.*

**TruGreen's Violations of the TCPA with Regard to Ms. Sorsby**

34. Ms. Sorsby originally registered her residential landline (773) 779-XXXX (her "Residential Landline") with the National Do-Not-Call list on July 3, 2003. This Residential Landline is the phone she uses in her home. A registration verification email for the Residential Landline is attached as **Exhibit 1**.

35. Ms. Sorsby began utilizing TruGreen's services starting in early 2019. During that time, she received calls from TruGreen up to twice a week soliciting her to purchase additional services from the company, services that she told the company she was not interested in receiving. In July, she complained to TruGreen about problems with their services on her lawn. By August, Ms. Sorsby had become disappointed in the results of TruGreen's services and decided to terminate her existing relationship with the company. Therefore, on or about August 27, 2019, she called and canceled her service. In response, TruGreen issued a $132.65 credit to her Visa card as a refund.

36. However, even though Ms. Sorsby had made it clear that she did not wish to continue using any of TruGreen's services, after terminating her relationship with TruGreen, she continued receiving a steady stream of telemarketing calls from the company to her Residential Landline, each one trying to sell her on further services or schedule additional treatments for her lawn.

37.     The following chart shows the calls that were placed to her Residential Landline after she terminated her relationship with TruGreen:

| Date | Time | Calling Number | Reverse No. Search |
|---|---|---|---|
| 8/29/2019 | 6:23 PM | 708-597-4000 | TruGreen |
| 9/9/2019 | 6:30 PM | 708-297-7500 | TruGreen Crestwood |
| 9/10/2019 | 4:12 PM | 630-818-1226 | TruGreen |
| 10/12/2019 | 3:10 PM | 630-818-1226 | TruGreen |
| 10/21/2019 | 10:30 AM | 630-818-1226 | TruGreen |
| 1/22/2020 | 4:30 PM | 708-597-4000 | TruGreen |
| 2/18/2020 | 12:23 PM | 708-714-4591 | TruGreen Sales |
| 3/20/2020 | 12:22 PM | 312-771-7983 | TruGreen |

38.     Ms. Sorsby verified that each of the foregoing calls to her Residential Landline came from TruGreen or someone calling on TruGreen's behalf. After receiving several of these unwanted solicitation calls, Ms. Sorsby began photographing her phone's call record for each call. Photographs of the call records for several of these calls are attached as **Exhibit 2**.

39.     At the time Ms. Sorsby received each of these calls to her Residential Landline, that number had been on the National Do-Not-Call Registry for more than fifteen years, and she had terminated her business relationship with TruGreen months earlier. As a result, TruGreen should not have placed any telemarketing calls to her. Nevertheless, she took the further step of affirmatively telling TruGreen to cease calling her. She did this not just once, but on four separate occasions, on each of the September 10, 2019, October 21, 2019, January 22, 2020, and the February 18, 2020 calls.

40.     Defendants, or someone acting on their behalf, violated Plaintiff's privacy by making each of the above referenced unwanted telemarketing calls, and they constitute a nuisance as they are annoying and harassing. Ms. Sorsby explicitly told the people who called her that she felt she was being harassed by Defendants' repeated telemarketing calls.

41.     Even if TruGreen had illegally decided to not honor Ms. Sorsby's National Do-Not-Call registration, her first request to stop calling her should have triggered TruGreen's obligation under 47 C.F.R. § 64.1200(d) to put her phone number on their Internal Do-Not-Call List, both under the relevant regulations and under their own internal privacy policy. But TruGreen failed to take this action, and/or failed to enforce its Internal Do-Not-Call List policies, and therefore, it illegally continued calling Ms. Sorsby for months after she requested that the calls stop.

42.     Ms. Sorsby's story is very similar to the complaints other consumers have expressed regarding TruGreen's calling practices.

43.     In addition to Ms. Sorsby's experience, the FTC received 828 complaints since April 15, 2016, from consumers complaining about TruGreen's illegal telemarketing. Of those, forty-eight (48) came from consumers in Illinois, and 668 complained about receiving calls after asking TruGreen to stop calling them. Among these complaints, consumers told the FTC:

a.      "Trugreen [sic] is harassing me! They continue to call me on a regular basis despite me telling them I am not interested in their services and to remove me from their call list. I have even made more than one complaint to management, but they continue to harass me."

b.      "TruGreen has called at least five time[s] in the last two days. Yesterday they call three time[s] in less than two hours. I . . . did business with them about ten years ago."

c.      TruGreen "calls on a weekly basis from different phone numbers. I have asked twice that they stop calling. We used them last year and we're dissatisfied with

their service and we have told them as much when we ask them to stop calling but they still call."

44.     Likewise, a Google search easily shows numerous online complaints from customers about TruGreen's telemarketing practices. For example, a person using the handle "theycallmesomething" wrote a post in or about 2018 on reddit.com complaining that he had been a TruGreen customer, but had terminated his service over four months before and told the company to stop calling him, but he had since received multiple solicitation calls from the company.[4] A consumer posted a similar story in January 2018 on the website pissedconsumer.com, where the consumer recounted receiving multiple solicitation calls after expressly asking to no longer receive any calls from TruGreen.[5]

45.     As a result, Plaintiff believes that Defendants have made a significant number of unwanted and illegal telemarketing calls to other persons in Illinois and throughout the entire United States who have either registered their telephone numbers with the National Do-Not-Call Registry or have expressly asked TruGreen to stop making telemarketing calls to them.

## CLASS ACTION ALLEGATIONS

**National Do-Not-Call Registry Class**

46.     Plaintiff brings Count I of this action under Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class tentatively defined as:

> All natural persons in the United States who, from April 29, 2016 to the commencement of this litigation, received more than one telephone solicitation from TruGreen in a 12-month period on their residential landline or cellular telephone line telemarketing TruGreen's products or service more than 31 days after registering their telephone number with the National Do-Not-Call Registry.

---

[4] u/theycallmesomething, *TruGreen lawn care is harassing me*, https://www.reddit.com/r/legaladvice/comments/85xyxk85xyxk/trugreen_lawn_care_is_harassing_me/
[5] *TruGreen will not stop calling me*, https://trugreen.pissedconsumer.com/trugreen-will-not-stop-calling-me-201801111167028.html

Excluded from this class definition are any employees, officers, directors of TruGreen, and attorneys appearing in this case, and any judge assigned to hear this action.

47.    Plaintiff reserves the right to modify this class definition as she obtains relevant information, including telemarketing call records, through discovery.

48.    Each of the persons identified in this National Do-Not-Call Registry Class has been harmed by the acts of Defendants because their privacy has been violated, they were subject to annoying and harassing calls that constitute a nuisance, and/or they were charged for incoming calls.

**Internal Do-Not-Call List Class**

49.    Plaintiff brings Count II of this action under Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class tentatively defined as:

All natural persons in the United States who, from April 29, 2016, to the commencement of this litigation, received one or more telephone solicitation on their residential landline or cellular telephone line telemarketing TruGreen's products or service after registering their telephone number with TruGreen's Internal Do-Not-Call List. Excluded from this class definition are any employees, officers, directors of TruGreen, and attorneys appearing in this case, and any judge assigned to hear this action.

50.    Plaintiff reserves the right to modify this class definition as she obtains relevant information, including telemarketing call records, through discovery.

51.    Each of the persons identified in this Internal Do-Not-Call List Class has been harmed by the acts of Defendants because their privacy has been violated, they were subject to annoying and harassing calls that constitute a nuisance, and/or they were charged for incoming calls.

**The Action Meets the Requirements to be Certified as a Class**

52.    Plaintiff is a member of both proposed Classes.

53. The proposed Classes can be identified through telephone records and databases used in transmitting the telemarketing calls.

54. <u>Numerosity</u>. The number of Putative Class Members is believed to be in the thousands, rendering the classes so numerous that individual joinder of all Class Members is impracticable.

55. <u>Commonality</u>. There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

      a.      Did Defendants place, or have they placed, telemarketing calls to Plaintiff and the Putative Class Members?

      b.      Whether Defendants' conduct violated 47 U.S.C. § 227(c) (the National Do-Not-Call Registry)?

      c.      Whether Defendants willfully or knowingly violated 47 U.S.C. § 227(c) (the National Do-Not-Call Registry)?

      d.      Whether Defendants' conduct violated 47 C.F.R. § 64.1200(d)(3) (the Internal Do-Not-Call List)?

      e.      Whether Defendants willfully or knowingly violated 47 C.F.R. § 64.1200(d)(3) (the Internal Do-Not-Call List)?

      f.      Whether the Defendants have Prior Express Written Consent or a still active Existing Business Relationship exemption that allowed them to make, or have made on their behalf, each of the calls made to Plaintiff and the Putative Class Members' residential lines?

56. <u>Typicality</u>. Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of the two (2) proposed Putative Classes' Members'. Plaintiff would only seek individual or actual

damages if class certification is denied. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other Members of the two (2) proposed Putative Classes.

57. <u>Adequacy</u>. Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the two (2) proposed Putative Classes because her interests coincide with, and are not antagonistic to, the interests of the Members of each proposed Putative Class she seeks to represent; she has retained counsel competent and experienced in such litigation; and she intends to prosecute this action vigorously. Plaintiff and her Counsel will fairly and adequately protect the interests of Members of the two (2) proposed Putative Classes.

58. <u>Superiority</u>. Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to the two (2) proposed Putative Classes' Members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Liability will be determined based on a common set of facts and legal theories. Willfulness will be determined based on Defendants' conduct and knowledge, not upon the effect of Defendants' conduct on the two (2) Putative Classes' Members.

59. The statutory damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for the Members of the two (2) proposed Putative Classes to individually redress effectively the wrongs done to them, as the TCPA has no attorney's fee shifting provision. Even if the Members of the two (2) proposed Putative Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by

the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

60. Class certification is appropriate because Defendants have acted on grounds generally applicable to the two (2) proposed Putative Classes, making appropriate equitable injunctive relief with respect to Plaintiff and the two (2) proposed Putative Classes' Members. Fed. R. Civ. P. 23(b)(2).

61. <u>Injunctive and Declaratory Relief Appropriate</u>. Defendants have acted on grounds generally applicable to the Putative Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Putative Classes appropriate on a class wide basis. Moreover, on information and belief, and based on her experience, Plaintiff alleges that the calls made by Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

## COUNT I

### VIOLATION OF 47 U.S.C. 227(C)
### TELEMARKETING IN VIOLATION OF THE TCPA'S NATIONAL DO-NOT-CALL PROVISIONS

62. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

63. In violation of 47 U.S.C. § 227(c), Plaintiff and all Members of the National Do-Not-Call Registry Putative Class, received telemarketing calls promoting the sale of TruGreen products or services on a residential phone line listed on the National Do-Not-Call Registry.

64.     Plaintiff and the National Do-Not-Call Registry Putative Class Members received more than one such call in a twelve (12) month period.

65.     By virtue of the foregoing, Defendants violated 47 U.S.C. § 227(c) as to Plaintiff and the Class and the National Do-Not-Call Registry Putative Class by initiating, on more than one occasion, a telemarketing call to the residential landlines of Plaintiff and the Members of the National Do-Not-Call Registry Putative Class without the prior express written consent or permission of Plaintiff or the Members of the National Do-Not-Call Registry Putative Class, and without there being an active non-terminated EBR with the Plaintiff or the Members of the National Do-Not-Call Registry Putative Class.

66.     Pursuant to 47 U.S.C. § 227(c)(5), Plaintiff and each National Do-Not-Call Registry Putative Class Member is entitled to recover from Defendants $500.00 in statutory damages for each such violation. In the event that Defendants are found to have knowingly or willfully violated the TCPA, this Court may, in its discretion, increase the amount of statutory damages to not more than $1,500.00 for each such violation with Plaintiff and each National Do-Not-Call Registry Putative Class Member.

67.     Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff, on behalf of herself and the National Do-Not-Call Registry Putative Class, also seeks injunctive relief prohibiting Defendants' violations of the TCPA in the future.

## COUNT II

### VIOLATION OF 47 C.F.R. § 64.1200(D)(3)
### FAILURE TO HONOR INTERNAL DO-NOT-CALL LIST REQUESTS

68.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

69. Plaintiff and the Internal Do-Not-Call List Putative Class each asked Defendants to stop making telemarketing calls to them.

70. In violation of 47 C.F.R. § 64.1200(d)(3), Defendants continued to make telemarketing calls to Plaintiff and the Internal Do-Not-Call List Putative Class after they were listed on Defendants' Internal Do-Not-Call List.

71. Plaintiff and the Internal Do-Not-Call List Putative Class received more than one (1) such call in a twelve (12) month period.

72. Pursuant to 47 U.S.C. § 227(c)(5), Plaintiff and each Internal Do-Not-Call List Putative Class Member is entitled to recover from Defendants $500.00 in statutory damages for each such violation. In the event that Defendants are found to have knowingly or willfully violated the TCPA, this Court may, in its discretion, increase the amount of statutory damages to not more than $1,500.00 for each such violation with Plaintiff and each Internal Do-Not-Call List Putative Class Member.

73. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff, on behalf of herself and the Internal Do-Not-Call List Putative Class, also seeks injunctive relief prohibiting Defendants' violations of the TCPA in the future.

## DEMAND FOR PRESERVATION

74. Plaintiff also specifically demands that Defendants retain and preserve all records related to the allegations in this Complaint. Specifically, Plaintiff's demand for preservation includes, but is not limited to, the following documents and information:

    a. All documents evidencing all phone numbers, including spoofed numbers, used by Defendants and/or persons or entities acting on their behalf in making telemarketing calls to residential landlines since April 29, 2016;

18

b.      All documents evidencing the identity or telephone number of all persons to whom Defendants, and/or persons or entities acting on their behalf, made one or more telemarketing calls to a residential landline;

c.      All documents evidencing the number of telemarketing calls made to each residential landline to which Defendants, and/or persons or entities acting on their behalf, made more than one telemarketing call since April 29, 2016;

d.      All documents, including transmission or phone logs, showing dates of all telemarketing calls made to a residential landline and the identity of the persons so solicited by Defendants, and/or persons or entities acting on their behalf, since April 29, 2016;

e.      All documents supporting the contention of Defendants that they had the prior express consent for any called party to whom a call to a residential landline was made by Defendants, and/or by persons or entities acting on their behalf, since April 29, 2016, and all documents evidencing the names, addresses and residential landline numbers of all persons who Defendants contend provided such prior express consent;

f.      All documents supporting the contention of Defendants that they had an EBR with any called party to whom a call to a residential landline was made by Defendants, and/or by persons or entities acting on their behalf, since April 29, 2016 and all documents evidencing the names, addresses and/or telephone numbers of all persons with whom Defendants contend it had such a relationship;

g.  All documents evidencing the identity and/or residential landline numbers of all persons who requested that Defendants, and/or persons or entities acting on their behalf, stop making calls to their residential landline since April 29, 2016;

h.  All written, recorded, electronic or other documentation evidencing the revocation and/or attempted revocation by any residential landline called party of any prior express consent that his or her residential landline could be called by Defendants, and/or by persons or entities acting on their behalf;

i.  All written, recorded, electronic or other documentation evidencing the termination, and/or attempted termination, by any called party of any EBR with Defendants;

j.  All documents evidencing or pertaining to any and all policies or procedures implemented by Defendants with regard to the making of telephone solicitations to residential landlines;

k.  All documents evidencing or pertaining to the knowledge of Defendants of the TCPA and/or the regulations and rulings of the FCC thereunder; and

l.  All documents evidencing or pertaining to any and all lawsuits and/or settlements to which Defendants were a party which, in whole or in part, pertain to the TCPA.

75.  Demand is made on Defendants to notify any third parties or vendors retained by Defendants to make telemarketing calls to residential landlines of this preservation demand and request production of any documents included within this demand

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and as representative of all other persons similarly situated, prays for judgment against Defendants, awarding relief as follows:

a.      Certifying the proposed National Do-Not-Call Registry Class and Internal Do-Not-Call List Class under Fed. R. Civ. P. 23 and appointing Plaintiff and her counsel to represent both the National Do-Not-Call Registry Class and Internal Do-Not-Call List Class;

b.      As to the National Do-Not-Call Registry Class, statutory damages as provided for under 47 U.S.C. § 227(c)(5), trebled as may be appropriate;

c.      As to the Internal Do-Not-Call List Class, statutory damages as provided for under 47 U.S.C. § 227(c)(5), trebled as may be appropriate;

d.      As to the National Do-Not-Call Registry Class, a permanent injunction restraining Defendants from making, or having made on their behalf, any additional non-emergency calls to residential landlines that are on the National Do-Not-Call Registry without first obtaining the prior express written consent of the called party or at a time when no EBR exists between Defendants and the called party;

e.      As to the Internal Do-Not-Call List Class, a permanent injunction restraining Defendants from making, or having made on their behalf, any additional non-emergency calls to residential landlines that are on the Internal Do-Not-Call List without first obtaining the prior express written consent of the called party;

f.      Pre-judgment interest from the date of filing this suit;

g.      A reasonable attorney's fee to be paid out of any common fund created by virtue

of this litigation;

h.      All costs of this proceeding; and

i.      All general, special and equitable relief to which Plaintiff and the respective

Members of the National Do-Not-Call Registry Class and the Internal Do-Not-

Call List Class are entitled to by law.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all counts so triable.

Dated: April 29, 2020                                      Respectfully submitted,

                                                                          **JO ANN SORSBY**


                                                                          */s/ Gary M. Klinger*
                                                                          Gary M. Klinger (ARDC# 6303726)
                                                                          **MASON LIETZ & KLINGER, LLP**
                                                                          227 W. Monroe Street, Suite 2100
                                                                          Chicago, Illinois 60606
                                                                          Tel.: (312) 283-3814
                                                                          gklinger@masonllp.com

                                                                          -and-

                                                                          Aaron Siri (*pro hac vice* to be filed)
                                                                          Mason A. Barney (*pro hac vice* to be filed)
                                                                          **SIRI & GLIMSTAD LLP**
                                                                          200 Park Avenue, 17th Floor
                                                                          New York, NY 10166
                                                                          Tel.: (212) 532-1091
                                                                          aaron@sirillp.com
                                                                          mbarney@sirillp.com

                                                                          *Attorneys for the Plaintiff and the Putative
                                                                          Classes*