IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JO ANN SORSBY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20-cv-2601 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| TRUGREEN LIMITED PARTNERSHIP, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jo Ann Sorsby ("Sorsby" or "Plaintiff") initiated this putative class action against Defendant TruGreen Limited Partnership ("TruGreen LP" or "Defendant"), TruGreen Inc., TruGreen Companies LLC, and TruGreen Holding Corporation on April 29, 2020. [1.] After this Court dismissed Defendants TruGreen, Inc., TruGreen LLC, and TruGreen Holding Corporation [41], Plaintiff had two remaining claims against TruGreen LP, alleging that it violated (1) violated 47 U.S.C. § 227(c)(5) by calling her and others with their phone numbers on the National Do-Not-Call Registry and (2) violated 47 C.F.R. § 64.1200(d)(3) by calling her and others with their phone numbers on Defendant's internal Do-Not-Call list [1, at ¶¶ 62–73]. On January 25, 2021, Defendant filed its first motion to strike class allegations. [45.] In responding to Defendant's motion, Plaintiff requested class-wide discovery to demonstrate that her proposed classes would meet Rule 23 requirements. [62, 66.] The Court ordered limited discovery to give the parties sufficient information to response to Defendant's motion and referred the matter to Magistrate Judge Weisman. [70.] Before the Court is Defendant TruGreen LP's renewed motion to strike class allegations. [93.] For the reasons stated below, Defendant's motion to strike class allegations [93] is granted.

I.  Background

   A.  Factual Background

As the Court has ruled previously on motions in this case, the facts are familiar. Plaintiff registered her residential landline to the National Do-Not-Call list on July 3, 2003. [1, at ¶ 34]. In early 2019, she began using TruGreen lawn care services, provided by Defendant TruGreen LP. [*Id.*, at ¶¶ 9, 35.] During that time, she received calls from TruGreen representatives up to twice a week soliciting her to purchase additional services from the company. [*Id.*, at ¶ 35.] She informed TruGreen that she was not interested in receiving these extra services and in August of 2019, she cancelled her TruGreen lawn services. [*Id.*] In response to Plaintiff cancelling her service, Defendant issued her a refund. [*Id.*, at ¶¶ 35–36.] However, after Plaintiff terminated her relationship with Defendant, from August 2019 to March 2020, she received eight calls from Defendant. [*Id.*, at ¶¶ 36–38.] Plaintiff told Defendant to stop calling her on September 10, 2019, October 21, 2019, January 22, 2020, and February 18, 2020. [*Id.*, at ¶ 39.] Plaintiff's complaint alleges that other former customers and non-customers similarly received unwanted calls from Defendant. [*Id.*, at ¶¶ 42–43.]

Plaintiff brought this complaint against Defendant on behalf of herself and those similarly situated, alleging that Defendant violated (1) 47 U.S.C. § 227(c)(5) by calling her and others despite their numbers being on the National Do-Not-Call Registry and (2) 47 C.F.R. § 64.1200(d)(3) by calling her and others she despite their numbers being on the Defendant's internal Do-Not-Call list. [1, at ¶¶ 62–73.] Plaintiff seeks to represent two classes. [*Id.*, at ¶¶ 46–51.] First, she seeks to represent a nationwide class of those on the Do-Not-Call Registry ("Nationwide DNC Registry Class"), including:

> All natural persons in the United States who, from April 29, 2016 to the commencement of this litigation, received more than one telephone solicitation

> from TruGreen in a 12-month period on their residential landline or cellular telephone line telemarketing TruGreen's products or service more than 31 days after registering their telephone number with the National Do-Not-Call Registry.

[*Id.*, at ¶ 46.] Next, she seeks to represent a nationwide class of those on TruGreen's internal Do-Not-Call List ("Internal DNC List Class"), including:

> All natural persons in the United States who, from April 29, 2016, to the commencement of this litigation, received one or more telephone solicitation on their residential landline or cellular telephone line telemarketing TruGreen's products or service after registering their telephone number with TruGreen's Internal Do-Not-Call List.

[*Id.*, at ¶ 49.] Plaintiff seeks statutory damages and an injunction. [*Id.*, at 21–22.]

### B. Procedural Background

On June 30, 2020, Defendants filed a to dismiss and a motion for protective order staying discovery pending further orders of the court. [22, 25.] On December 23, 2020, the Court denied in part and granted in part Defendant's motion to dismiss, dismissing various TruGreen corporate entities and leaving only Defendant TruGreen LP as the remaining defendant. [41.]

Defendant then filed its first motion to strike class allegations. [45.] Defendant argued that Plaintiff would be unable to meet Rule 23 requirements of typicality, commonality, and predominance. [*Id.*] The parties disagreed about the need for discovery prior to the Court ruling on Defendant's motion. [48.] The Court ordered parties to complete their mandatory initial discovery disclosures and struck Defendant's motions. [57.] Among those disclosures included transcripts of telephone calls between Plaintiff and Defendant. [62.] After the parties had completed those disclosures [62], the parties still disagreed on the need for additional discovery to resolve Defendant's renewed motion to strike class allegations. [62, 66–69.]

While the Court denied complete classwide discovery, as Plaintiff requested, it did allow for limited discovery "proportional to the needs of the case." [70, at 1.] The Court explicitly

3

noted that it would be helpful for the Plaintiff to distinguish cases in this district, *Cholly v. Uptain Grp., Inc.*, and *Wolfkiel v. Intersections Ins. Servs. Inc.*, that held that similarly situated plaintiffs with TCPA claims did not meet Rule 23 requirements. [*Id.*, at 2.]

The parties exchanged various documents, including accounts of twenty-five random former customers, call transcripts, and internal training materials. [89; 94-1 to 94-5; 102-1 to 102-4.] Once the parties had agreed that they had the necessary discovery to resolve a subsequent motion to strike class allegations, Defendant filed a renewed motion to strike class allegations, which the Court now resolves. [93.]

## II. Legal Standard

Consistent with Rule 23(c)(1)(A), the Court must determine "[a]t an early practicable time after a person sues or is sued as a class representative * * * whether to certify the action as a class." FED. R. CIV. P. 23(c)(1)(A). Courts within this district have held that motion to strike class allegations is "an appropriate device to determine whether the case will proceed as a class action." *Wright v. Fam. Dollar, Inc.*, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010); see also *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 294 (N.D. Ill. Mar. 17, 2014) (citing cases within this district that evaluate motions to strike under Rule 23). "When a plaintiff's class allegations are facially and inherently deficient," the court should grant a motion to strike, as class certification is inappropriate. See *Garvey v. Am. Bankers Ins. Co. of Fla.*, 2019 WL 2076288, at *1 (N.D. Ill. May 10, 2019) (citing *Buonomo*, 301 F.R.D. at 295) (cleaned up); see also *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) (noting that "a court may deny class certification even before the plaintiff files a motion requesting certification"). While courts within this district have varied on which party bears the burden of demonstrating such allegations, see *Jones v. BRG Sports, Inc.*, 2019 WL 3554374, at *3 (N.D. Ill. Aug. 1, 2019), as

4

the parties acknowledge, the defendant bears the burden of persuasion, [103, at 3–4].

Because motions to strike class allegations are evaluated under Rule 23, the plaintiff must meet Rule 23 requirements. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). The plaintiff must first meet the four Rule 23(a) requirements for class certification: numerosity, commonality, typicality, and adequacy. FED. R. CIV. P. 23(a); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). After the plaintiff has passed the initial Rule 23(a) threshold, the plaintiff must additionally satisfy one of the conditions of Rule 23(b). FED. R. CIV. P. 23(b); *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 373–74 (7th Cir. 2015). For classes seeking to be certified under Rule 23(b)(2), the plaintiff must additionally demonstrate predominance and superiority. FED. R. CIV. P. 23(b)(2); *Messner*, 669 F.3d at 811.

### III. Analysis

Defendant argues that because certain key factual allegations are unique to Plaintiff, she is an atypical and inadequate class representative. [94, at 13; 109, at 7–9.] The Court agrees. Based on the pleadings and limited discovery necessary to resolve this motion, Plaintiff's class allegations are "facially and inherently deficient" because Plaintiff is an atypical and inadequate class representative. *Garvey*, 2019 WL 2076288, at *1. In the alternative, Plaintiff also fails to meet the predominance and commonality requirements. *Id.*

#### A. The Telephone Consumer Protection Act ("TCPA")

The Court begins this discussion with some background on the Telephone Consumer Protection Act ("TCPA"). Among other things, the TCPA provides to consumers who have placed their number on the National Do-Not-Call Registry a private right of action against telemarketers that make unsolicited calls to them. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2), (f). A consumer can sue the entity calling her if she "has received more than

5

one telephone call within any 12-month period" from the same entity. 47 U.S.C. § 227(c)(5). Additionally, companies must maintain internal do-not-call lists and cease calling individuals on this list within a reasonable timeframe which may not exceed 30 days. 47 C.F.R. § 64.1200(d)(3), (5), (6).

The TCPA does not prohibit solicitations if a consumer consented to receive calls, including when a person has an established business relationship ("EBR") with the entity calling. See 47 C.F.R. § 64.1200(a)(2)(iv), (f)(5). An "established business relationship" is defined as "a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call * * * which relationship has not been previously terminated by either party." 47 C.F.R. § 64.1200(f)(5); see also Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991, 68 FR 44144-01. A consumer's "seller-specific do-not-call request * * * terminates an established business relationship for purposes of telemarketing and telephone solicitation even if the subscriber continues to do business with the seller." 47 C.F.R. § 64.1200(f)(5)(i).

### B. Typicality and Adequacy

Because the typicality and adequacy inquiries merge in the parties' arguments and in caselaw, the Court considers them together here. See *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011) (citing FED. R. CIV. P. 23(a)(4)) (noting that "in many cases * * * the requirement of typicality merges with the further requirement that the class representative 'will fairly and adequately protect the interests of the class'").

To comply with Rule 23(a), the movant must show that "the claims or defenses of the

6

representative parties are typical of the claims or defenses of the class"—*i.e.*, typicality—and that "the representative parties will fairly and adequately protect the interests of the class"—*i.e.*, adequacy of representation. FED. R. CIV. P. 23(a)(3), (4). A plaintiff's claim is typical if it arises from the same event, practice, or course of conduct that gives rise to the claims of other class members and is based on the same legal theory. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006). "Although the typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members, the requirement primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (citation omitted and cleaned up). To satisfy the adequacy requirement, a named plaintiff, among other things, must be a member of the putative class and have the same interest and injury as other members. *Conrad v. Boiron, Inc.*, 869 F.3d 536, 539 (7th Cir. 2017). In addition, the plaintiff must be able to "keep the interests of the entire class at the forefront." *Id.*

However, a class representative may be inadequate and atypical if she is subject to a substantial defense unique to her. See *CE Design*, 637 F.3d at 726 (citation omitted) ("The presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation."); *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011) ("[N]amed plaintiffs who are subject to a defense that would not defeat unnamed class members are not adequate class representatives, and adequacy of representation is one of the requirements for class certification."); *Koos v. First Nat. Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir. 1974) ("Where it is predictable that a major focus of the litigation will be on

7

an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative.").

At the outset, Plaintiff argues that Defendant's objections on adequacy and typicality grounds are premature and more suited to a motion for class certification. [103, at 12.] The Court disagrees. As noted above, the Court may determine "whether to certify the action as a class action" at "an early practicable time after a person sues." FED. R. CIV. P. 23(c)(1)(A); see also *Kasalo*, 656 F.3d at 563. If Plaintiff's class allegations are "facially and inherently deficient * * * a motion to strike class allegations can be an appropriate device to determine whether the case will proceed as a class action." *Garvey*, 2019 WL 2076288, at *1 (cleaned up and citation omitted). The Court need not wait for full class discovery to do so. See *Pruitt v. Pers. Staffing Grp., LLC*, 2020 WL 3050330, at *4 (N.D. Ill. June 8, 2020) ("With the relevant discovery concluded, it is practicable, not premature, to decide [the named plaintiffs' adequacy as class representatives]."). Further, as Defendant points out, the Court flagged its concerns regarding the typicality and adequacy requirements in its July 23, 2021 order. [70, at 3 n.2.] Plaintiff had an opportunity to request the necessary discovery to resolve these issues and signaled that she has the necessary facts to do so. [84, at 3; 107, at 4–5.] On the only issues before the Court, the parties have developed a record sufficient for the Court to rule on the motion to strike class allegations. Plaintiff has not suggested what additional facts she would like to develop to better answer this inquiry. See *Alqaq v. CitiMortgage, Inc.*, 2014 WL 1689685, at *5 (N.D. Ill. Apr. 29, 2014) ("Plaintiff has not suggested what facts to be learned in discovery would be useful in making such class determination issues. The grounds on which denial of class certification will be based do not require further factual discovery.").

Next, Plaintiff argues that there are no conflicts between class members who have

revoked an EBR and those who have not, and Defendant fails to point to any applicable authority that states as much. [103, at 13.] Not so. Defendant notes applicable authority regarding the import of typicality in a class representative. [109, at 7–8.] Indeed, Rule 23's typicality requirement is important for a variety of reasons. See generally *CE Design*, 637 F.3d at 724. As to the substantive conflict between those who have revoked an EBR and those who have not, the Court disagrees, as it previously indicated in its July 23, 2021 order. [70, at 3.] The parties agree that Plaintiff and a small subset within both her proposed Nationwide DNC Registry and Internal DNC List Classes would likely be subject to the EBR defense. [1, at ¶ 5; 94, at 44; 103, at 6.] Plaintiff even highlighted this issue in her initial complaint. [1, at ¶ 5.] Further, as the Court observed in its July 23, 2021 order—and Plaintiff failed to rebut in her briefing—Plaintiff's conversation with Defendant highlights the ambiguity of determining whether class members successfully revoked their business relationship with Defendant. [70, at 3 n.2.] Indeed, Defendant pointedly notes that Plaintiff's Internal DNC List Class may fail for lack of typicality and adequacy of representation because under one of Plaintiff's theories, she cannot state a claim. [94, at 14–15.] At bottom, while Plaintiff alleges that she successfully terminated her EBR with Defendant, TruGreen disputes this. Plaintiff is thus subject to an individual defense that would potentially defeat her claims. *CE Design*, 637 F.3d at 726. Because it is "predictable that a major focus of the litigation" would be on determining whether Plaintiff and other class members who had a former relationship with Defendant successfully terminated their business relationship, Plaintiff "is not a proper class representative." *Koos*, 496 F.2d at 1164.

For these reasons, the Court holds that "plaintiff's class allegations are facially and inherently deficient," as Plaintiff is an atypical and inadequate class representative. *Garvey*, 2019 WL 2076288, at *1.

9

### C. Predominance and Commonality

In the alternative, the Court concludes that Plaintiff's class allegations are "facially and inherently deficient" because Plaintiff cannot show predominance. *Garvey*, 2019 WL 2076288, at *1. Because the inquiries of commonality and predominance overlap, the Court treats both together in its analysis. See, *e.g.*, *Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 622–23 (1997).

"Rule 23(b)(3) permits class certification only if the questions of law or fact common to class members 'predominate' over questions that are individual to members of the class." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 814 (7th Cir. 2012). To establish commonality, Plaintiff must do more than merely raise "common questions—even in droves." *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011) (internal quotations omitted). Rather, Plaintiff must show that a class-wide proceeding will "generate common *answers* apt to drive the resolution of the litigation." *Id.* (emphasis in original). While similar to commonality, the predominance inquiry is "far more demanding." *Amchem,* 521 U.S. at 624. Predominance tests whether a proposed class is "sufficiently cohesive" to warrant adjudication as a class and "calls upon courts to give careful scrutiny to the relation between common and individual questions in a case." *Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F.4th 839, 843 (7th Cir. 2022). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member; a common question is one where the same evidence will suffice for each member to make a *prima facie* showing or the issue is susceptible to generalized, class-wide proof." *Id.* at 843–44. "[I]t is not the final merits of the permission inquiry that matter for Rule 23(b)(3) purposes; it is the method of determining the answer and not the answer itself that drives the predominance consideration." *Id.* at 845.

Other courts within this district have found that TCPA classes fail to satisfy the

10

predominance requirement because "determin[ing] whether each potential class member did in fact revoke his or her prior consent at the pertinent time" would force the court "to conduct class-member-specific inquiries for each individual." *Wolfkiel v. Intersections Ins. Sers. Inc.*, 303 F.R.D. 287, 293 (N.D. Ill. 2014); see also *Jamison v. First Credit Servs., Inc.*, 2013 WL 3872171, at *5 (N.D. Ill. July 29, 2013) ("[C]ourts have reached different opinions in TCPA cases regarding whether issues of individualized consent predominate so as to prevent class certification.") (citation omitted). Courts in the district have found that individualized issues do not predominate where information regarding consent can be ascertained from a single source. Compare *Craftwood Lumber Co., v. Essendant, Inc.*, 2020 WL 3000255, at *3–5 (N.D. Ill. June 4, 2020) (finding that individualized questions about consent precluded predominance because there was no single source of telephone numbers that did not consent to telemarketing calls); with *Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287, 294 (N.D. Ill. 2014) (finding that individualized questions did not preclude predominance because all nonconsenting fax recipients could be found on a single "leads" list); and *Hinman v. M & M Rental Ctr., Inc.*, 545 F.Supp.2d 802, 806–07 (N.D. Ill. 2008) (finding that individualized questions did not preclude predominance because fax broadcasts were sent *en masse* on a singular "leads" list obtained from a single source).

Defendant argues that given that Plaintiff and another subset of class members will likely be subject to the EBR defense, the Court will necessarily be required to complete individualized inquiries into each class member's business relationship with TruGreen. [94, at 6–8.] The Court agrees. Because there is no single source of information that would demonstrate whether all class members had successfully terminated their business relationship with Defendant, Plaintiff's proposed revocation determinations would require individualized inquiries and thus are not

11

suitable for classwide treatment in this case.

At the outset, the Court addresses unresolved issues from its July 23, 2021 order that the parties address in briefing. [70.] In its order, the Court asked the parties to address whether the Court should follow Judge Gettleman's and Judge Zagel's conclusions in *Cholly v. Uptain Grp., Inc.*, and *Wolfkiel v. Intersections Ins. Servs. Inc.*, or Judge Wood's conclusions in *Chicago Car Care Inc. v. A.R.R. Enterprises, Inc.* [70, at 2.] Specifically, the Court advised Plaintiff to address *Cholly* and *Wolfkiel* to demonstrate "that there are efficient and appropriate ways to identify a plausible class." [70, at 2.] In response, Plaintiff highlights *Chicago Care Care* as instructive because it held that "[o]n the face of the pleadings * * * there is no reason to conclude that complex individualized inquiries are needed." [104, at 5–6]; *Chicago Car Care*, 2021 WL 1172262, at *6. Plaintiff distinguishes *Chicago Car Care* as relying on the pleadings alone, rather than "outside evidence" like in *Cholly* and *Wolfkiel*.[1] [103, at 4–5.]

The Court finds Plaintiff's attempt to distinguish *Chicago Car Care* unpersuasive and agrees with the courts within this district that have similarly found that plaintiffs with TCPA claims failed to demonstrate predominance. First, the Court rejects any notion that Defendant improperly uses evidence outside of the complaint. As noted by the Defendant [109, at 3–4], Plaintiff specifically requested discovery to properly brief this motion [48, at 4; 70, at 2–3]. The Court thereafter referred this case to Magistrate Judge Weisman to determine the scope of discovery that was "proportional to the needs of this case." [70, at 1.] Only after Plaintiff agreed that she had sufficient discovery to complete her brief did the Court hear this motion. [84, at 3; 107, at 4–5.] Next, Plaintiff's argument that *Cholly* and *Wolfkiel* are distinguishable because

---

[1] Plaintiff argues that because the absence of an EBR is not within her class definition, the issue of EBR will not predominate the adjudication of the class. [103, at 7.] Not so. Plaintiff concedes that her class will necessarily sweep in present or former TruGreen customers because of its broad terms. [103, at 13.] Further, Plaintiff acknowledges that EBR is a valid defense to liability under 47 U.S.C. § 227(c)(5). [1, at ¶ 21.]

they rely only on the pleadings is not entirely correct. *Cholly* does not only rely on the pleadings. As the Court did in this case, Judge Gettleman allowed limited discovery for the purpose of deciding Defendant's motion to strike class allegations. *Cholly v. Uptain Group, Inc.*, 2015 WL 9315557, at *3 (N.D. Ill. Dec. 22, 2015); *Cholly*, 2017 WL 449176, at *3–4. Finally, putting aside this factual error, as Defendant correctly notes [109, at 5], given the procedural posture of this case, the Court may probe beyond the pleadings to determine "the appropriateness of class certification." See *Lee v. Children's Place Retail Stores, Inc.*, 2014 WL 5100608, at *2 (N.D. Ill. Oct. 8, 2014); but see *Jones*, 2019 WL 3554374, at *4. Indeed, the Court and other courts in this district have done the same. See *Pruitt*, 2020 WL 3050330, at *4; *Cholly*, 2017 WL 449176, at *3–4.

Beyond the cases cited above, the Court refocuses on the applicable standard: whether the Court can identify class members who properly revoked their EBR using "generalized, class-wide proof."[2] *Gorss*, 29 F.4th at 844. Even with the benefit of initial discovery, Plaintiff cannot advance a theory of generalized proof that could establish proper revocation of EBR for all applicable class members. As such, Plaintiff's proposed classes fail on predominance grounds.

Plaintiff argues that there are various methods to determine whether a former TruGreen customer properly revoked their EBR and that "it would be a mechanical process to determine [revocation of EBR] dates based on documents that TruGreen appears to maintain." [103, at 10–13.] But Plaintiff's proposed method presents multiple problems.

First, Plaintiff's argument that Defendant's internal Do-Not-Contact forms can be the

---

[2] Plaintiff argues that Defendant must show that a "significant percentage" of Plaintiff's proposed class is subject to the EBR defense, citing various district court opinions utilizing the "significant percentage" standard. [103, at 6–7.] As the Defendant points out [109, at 9–10], the Seventh Circuit has held that the predominance inquiry does not require that the defendant demonstrate that a "significant percentage" of class members would fall into an affirmative defense; rather, "[t]he question for class certification purposes is whether resolving this key issue is susceptible to generalized, class-wide proof." *Gorss*, 29 F.4th at 844. The Court utilizes this inquiry in its analysis.

13

decisive date on which a consumer terminated her EBR highlights the difficult process that the Court would necessarily wade into to determine EBR termination dates. The Do-Not-Contact form for Plaintiff indicates a date months after the alleged date she requested that Defendant not contact her. [68-1; 104, at 13.] Indeed, as Defendant points out, it potentially invalidates her claim. [109, at 13.] Other members of both classes would likely similarly have multiple dates of supposed termination, relying in large part on call records with varying indications of intent to terminate, as the Court emphasized in its July 23, 2021 order. [70, at 2.] Plaintiff provides no clarity on how to narrow down which members effectively terminated their business relationship with Defendant, other than she might in the future be "able to develop a method to identify such requests through systematic searches." [103, at 11.] This is insufficient.

Further, the records before the Court leave unclear *why* consumers have cancelled service. As Defendant points out [109, at 14], there are multiple reasons a consumer might cancel service which do not include a specific internal Do-Not-Call request.[3] Plaintiff would need to present evidence "that varies from member to member," rather than "generalized, class-wide proof" to demonstrate that class members successfully revoked their EBR with Defendant. *Gorss*, 29 F.4th at 844. Once again, the Court would need to dive into the factual circumstances of each customer cancellation, which makes this question individual, rather than common. *Gorss*, 29 F.4th at 843–44.

For these reasons, the Court holds that "plaintiff's class allegations are facially and inherently deficient," as the Court's determination regarding the EBR defense will likely

---

[3] The parties dispute whether putting oneself on a company's internal Do-Not-Call list is the only method of terminating an EBR. It is unclear all the possible ways in which a customer can terminate an EBR. See 47 C.F.R. § 64.1200(f)(4); In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 30 F.C.C. Rcd. 7961 (July 10, 2015) (noting that a consumer may revoke consent by call, in-person, "among other possibilities"); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017) (holding that "[r]evocation of consent must be clearly made and express a desire not to be called or texted"). The Court need not decide this issue for the purpose of this order.

predominate the Court's adjudication, making this case unsuitable for classwide resolution.[4]

*Garvey*, 2019 WL 2076288, at *1.

IV.     **Conclusion**

For these reasons, Defendant's motion to strike class allegations [93] is granted.

Dated: January 9, 2023

Robert M. Dow, Jr.
United States District Judge

---

[4] Because the Court has determined that Plaintiff's proposed classes fail on typicality and, in the alternative, predominance grounds, the parties' arguments regarding Plaintiff's requested injunctive relief are moot.